UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No. 8:25-cr-235-SDM-AAS

ELIZABETH DANIELLE ROWE
a/k/a Simon Roe

_____/

REPORT AND RECOMMENDATION

Defendant Elizabeth Danielle Rowe a/k/a Simon Roe moves to suppress the results of a search of his Instagram account. (Doc. 29). The Government responds in opposition to Mr. Rowe's motion. (Doc. 34). Mr. Rowe replies in response to the Government's opposition. (Doc. 37). For the reasons stated below, it is **RECOMMENDED** that Mr. Rowe's motion be **DENIED**.

I.      BACKGROUND

On January 24, 2025, the Instagram account @isidoringroe sent the following message directly to victim A.A.'s Instagram account @neuroticjewishgay: "I am coming to kill you. I will kill your pets first while you watch," among other threatening statements. (*See* Doc. 34-1, 2). On April 2, 2025, after exhausting other mitigation efforts, A.A., a New York City resident, reported the threatening message to the Federal Bureau of Investigation's (FBI) New York City Field Office. (*See* Doc. 29-1, p. 2). The FBI preliminarily concluded that the offending Instagram account belonged to Mr.

1

Rowe, who was living in Tampa, Florida. (*Id.*).

On April 9, 2025, a task force officer (TFO) with the FBI's Tampa Field Office sent a preservation request to Instagram (Meta) for @isidoringroe (Mr. Rowe's account). (*Id.* at p. 4). The TFO requested that Meta preserve the date in Mr. Rowe's account for the timeframe between January 17, 2025, and January 31, 2025. (*Id.* at pp. 4–5).

On April 15, 2025, the TFO conducted a telephone interview with A.A. regarding the threatening messages. (*Id.* at p. 2). During the interview, A.A. stated that she uses her public Instagram account @neuroticjewishgay to post about political topics. On April 23, 2025, the TFO obtained a state court warrant to search Mr. Rowe's Instagram account. (*Id.* at pp. 7–10). The affidavit supporting the warrant application outlined the investigation and the probable cause to search Mr. Rowe's account for evidence of electronic threats to kill or do bodily injury, in violation of Florida Statute § 836.10. (*Id.* at pp. 1–6).

The warrant required Meta to provide the device used, photos, communications, location data, and the data preserved in response to the April 9, 2025, preservation request. (*Id.* at pp. 8–9). The warrant also permitted law enforcement to conduct searches for (1) identifying information; (2) communications, postings, or follower lists to identify coconspirators; (3) all data associated with the account to "assist in determining if the operator of the

2

account posted the Threat to Kill"; and (4) devices used by the Instagram account to determine the source of the threatening message. (*Id.* at p. 9).

Meta complied with the search warrant and produced both the existing content of Mr. Rowe's account from January 1, 2025, through April 23, 2025, as well as the preserved content from January 17, 2025, to January 31, 2025. Both the existing content and the preserved content contained Mr. Rowe's January 24, 2025 threatening messages to A.A.

## II.   DISCUSSION

Mr. Rowe's motion to suppress argues the preservation request sent to Meta was a "seizure" under the Fourth Amendment and, because it was warrantless, it was unconstitutional. (Docs. 29, 37). Mr. Rowe also argues the search warrant the Government obtained to search the Meta was overbroad, lacking in probable cause, and so generally deficient that even the *Leon*[1] good faith exception does not apply. (*Id.*). Mr. Rowe requests that the evidence obtained from the search warrant issued to Meta be suppressed.[2]

### A.   The Preservation Request

Under the Stored Communications Act (SCA), "[a] provider of wire or

---

[1] *United States v. Leon*, 468 U.S. 897 (1984).

[2] On October 23, 2025, the parties appeared for a videoconference. (Doc. 45). At that time, the court gave Mr. Rowe a November 14, 2025 deadline to request an evidentiary hearing on his motion to suppress evidence. (*Id.*). Mr. Rowe did not request a hearing.

electronic communication services or a remote computing service, upon the request of a governmental entity, shall take all necessary steps to preserve records and other evidence in its possession pending the issuance of a court order or other process." 18 U.S.C. § 2703(f)(1).[3] Those records shall be preserved for ninety days and shall be preserved for another ninety days upon the government's request. § 2703(f)(2).

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). In general, "seizures of personal property are 'unreasonable within the meaning of the Fourth Amendment,' without more, 'unless . . . accomplished pursuant to a judicial warrant,' issued by a neutral magistrate after finding probable cause." *Illinois v. McArthur*, 531 U.S. 326, 330 (2001) (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)).

Here, preserving a copy of the data already available on Instagram to its subscribers did not result in a seizure of Mr. Rowe's property. Meta's preservation did not meaningfully interfere with Mr. Rowe's possessory interest in his Instagram account. *Jacobsen*, 466 U.S. at 113. According to the

---

[3] The Florida analog to required disclosure of customer communications under the Stored Communications Act, 18 U.S.C. § 2703, is found at Florida Statute § 934.23.

4

"Declaration Regarding Preservation" provided by Meta (Doc. 47), when the government sends a preservation request to a service provider, the government obtains no information and the account owner retains full and unhindered access to his account. The government cannot obtain any of the preserved information without further legal process. Meta essentially took a snapshot of the data it had at the time it received the preservation request and set that snapshot aside. This is not a seizure. *United States v. Rosenow*, No. 17CR3430 WQH, 2018 WL 6064949, at \*10 (S.D. Cal. Nov. 20, 2018) (finding a preservation request under Section 2703(f) was not a Fourth Amendment seizure), aff'd on other grounds, 33 F.4th 529 (9th Cir. 2022), opinion amended and superseded on denial of reh'g, 50 F.4th 715 (9th Cir. 2022), and aff'd, 50 F.4th 715 (9th Cir. 2022).

Although the Eleventh Circuit has not decided this specific issue, even if the data preservation constituted a seizure, the good faith exception would protect the data from suppression. In *Illinois v. Krull*, the Supreme Court explained that applying the exclusionary rule to suppress evidence is not the appropriate response when law enforcement acts in objectively reasonable reliance on a statute, even if that statute is later found unconstitutional. 480 U.S. 340, 349–50 (1987). "Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law . . . Penalizing the officer for the legislature's error, rather than his own,

cannot logically contribute to the deterrence of Fourth Amendment violations," which is the "prime purpose" of excluding evidence. *Id.* at 347, 349–50 (citations and internal quotation marks omitted).

The law enforcement agents in this case acted in reasonable reliance on the SCA. They requested that Meta preserve Mr. Rowe's Instagram account data in its possession until they could obtain a search warrant under Section 2703(f), which they had no reason to believe was clearly unconstitutional. *See United States v. Korte*, 918 F.3d 750, 758 (9th Cir. 2019) (finding the good faith exception applied when the Government reasonably relied on the SCA); *United States v. Warshak*, 631 F.3d 266, 288–89 (6th Cir. 2010) (same); *United States v. Zwiefelhofer*, No. 2:19-CR-150-SPC-NPM, 2023 WL 4931899, at *3 (M.D. Fla. Aug. 2, 2023) (same).

Thus, the undersigned recommends the court conclude that the preservation of data did not result in a seizure of Mr. Rowe's property. However, even if a seizure occurred, the undersigned recommends the court conclude the good faith exception applies to prevent the exclusionary rule from being applied.

### B.   The subsequent search and the *Leon* good faith exception

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

6

U.S. Const. amend. IV. Evidence may be excluded if these requirements are not met, although this rule is exercised sparingly. *United States v. McCall*, 84 F.4th 1317, 1323 (11th Cir. 2023), *cert. denied*, 144 S. Ct. 1042 (2024). The good faith exception applies to save evidence obtained by an officer acting in objectively reasonable reliance on a warrant that is deficient. *Id.* Pertinent here, the good faith exception will not apply if a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid," or if a warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon*, 468 U.S. 897, 923 (1984) (citations and internal quotation marks omitted). "In doubtful or marginal cases, suppression is inappropriate." *McCall*, 84 F.4th at 1323 (citation and internal quotation marks omitted).

At the outset, "[p]robable cause is 'not a high bar.'" *United States v. Delgado*, 981 F.3d 889, 897 (11th Cir. 2020) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)). "Probable cause to support a search warrant exists when the totality of the circumstances allows the conclusion that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Kapordelis*, 569 F.3d 1291, 1310 (11th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The Fourth Amendment's requirement that a warrant "particularly" describe the place to be searched and things to be seized sought to end the colonial use of a "general warrant," which permitted "exploratory rummaging" through one's belongings. *United States v. Blake*, 868 F.3d 960, 973 (11th Cir. 2017). Even so, "[i]t is universally recognized that the particularity requirement must be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit." *United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir. 1982).

Mr. Rowe relies on *Blake*, 868 F.3d at 973–75 and *United States v. McCall*, 84 F.4th 1317, 1327–28 (11th Cir. 2023) to argue that the search warrant here was overbroad and lacked probable cause. In both cases, the Eleventh Circuit urged the importance of subject-matter and especially temporal limitations in search warrants for data, but ultimately found that the good faith exception applied.

Based on the facts in the affidavit, there was a fair probability that evidence of Mr. Rowe's threatening message to A.A. would be found in his Instagram account. Although the warrant allowed law enforcement to search several categories of data, the warrant was nevertheless sufficiently particular. The warrant tailored the search parameters to Mr. Rowe's conduct

8

and limited law enforcement's query to records that specifically tied Mr. Rowe to his threat to kill in violation of state law. (Doc. 29-1, p. 9).

Indeed, the warrant lacked a temporal limitation on the data requested from Meta, which the Eleventh Circuit has described as "the preferred"—not required—"method of limiting the scope of a search warrant." *McCa*ll, 84 F.4th at 1328. In any event, Meta only provided data from January 1, 2025, through April 23, 2025, for Mr. Rowe's Instagram account. As Mr. Rowe's Instagram account was registered in October 2020, the temporal scope was appropriately limited by Meta's production.

Further, to find that the good faith exception does not apply, "the affidavit must be so clearly insufficient that it provided 'no hint' as to why police believed they would find incriminating evidence." *McCall*, 84 F.4th at 1325 (quoting *United States v. Morales*, 987 F.3d 966, 976 (11th Cir. 2021)). "[T]he officer's judgment must be more than just 'mistaken'—it must be [ ] 'plainly incompetent.'" *Id.* (citation omitted). The Eleventh Circuit has held that "[i]n all but the most unusual circumstances, it is objectively reasonable for a law enforcement officer to rely on a court order." *United States v. Stowers*, 32 F.4th 1054, 1067 (11th Cir. 2022).

Here, the affidavit was not so "bare-boned" that an officer would have to be "entirely unreasonable" or acting in bad faith to rely on it. *See United States v. Martin*, 297 F.3d 1308, 1313, 1315 (11th Cir. 2022) (explaining suppression

is necessary "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause" (citation and internal quotation marks omitted)); *Delgado*, 981 F.3d at 899. Therefore, even if the search warrant lacked probable cause or was overbroad, the undersigned recommends the court find the evidence seized pursuant to the search of Mr. Rowe's Instagram need not be suppressed because of the *Leon* good faith exception.

## III.   CONCLUSION

For the foregoing reasons and cited authority, the court **RECOMMENDS** that Mr. Rowe's motion to suppress evidence resulting from the search of his Instagram account (Doc. 29) be **DENIED**.

**ENTERED** in Tampa, Florida, on December 9, 2025.

_Amanda Arnold Sansone_
AMANDA ARNOLD SANSONE
United States Magistrate Judge

10

## <u>NOTICE TO PARTIES</u>

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.